IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHRISTOPHER JAMES XIMENEZ,

Petitioner,

vs.

JAMES D. HARTLEY,[1] Warden, Avenal State Prison,

Respondent.

No. 2:08-cv-03056-JKS

MEMORANDUM DECISION
and
ORDER [Re:  Motion at Docket No. 48]

Christopher James Ximenez, a state prisoner appearing *pro se*, filed a Petition for Habeas Corpus under 28 U.S.C. § 2245.  Ximenez is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the Avenal State Prison.  Respondent has answered, and Ximenez has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

Following a jury trial, Ximenez was convicted in April 2005 in the Sacramento County Superior Court of kidnaping, Cal. Penal Code § 207(a), assault with a deadly weapon, Cal. Penal Code § 245(a)(1), child endangerment, Cal. Penal Code § 273(a), and making criminal threats, Cal. Penal Code § 422.  In a separate court trial, the trial court found that Ximenez had suffered a prior serious felony conviction, Cal. Penal Code §§ 667(b)-(i), 1170.12, with a prior prison term enhancement, Cal. Penal Code § 667.5(b).  The trial court sentenced Ximenez to an aggregate,

---

[1] James D. Hartley, Warden, Avenal State Prison, is substituted for Derrell G. Adams, Warden, Mule Creek State Prison.  Fed. R. Civ. P. 25(d).

determinate prison term of twenty-eight years under California's "three-strike" law.  The California Court of Appeal, Third Appellate District, affirmed Ximenez's conviction and sentence in an unpublished decision,[2] and the California Supreme Court denied review on July 9, 2008.

While his appeal was pending, in December 2007 Ximenez filed a petition for habeas relief in the California Court of Appeal, Third Appellate District, challenging his March 1996 conviction that served as the prior "strike" in imposing his sentence in April 2005.  The Court of Appeal summarily denied his petition without opinion or citation to authority.  Ximenez's subsequent petition for habeas relief in the California Supreme Court was summarily denied citing *In re Robbins*, 959 P.2d 311, 317-18 (Cal. 1998) and *People v. Duvall*, 886 P.2d 1252, 1258 (Cal. 1995), on June 25, 2008.  Ximenez timely filed his Petition for relief in this Court on December 5, 2008.

After his appeal was decided, Ximenez again challenged his 1996 conviction in a habeas petition filed in the California Court of Appeal, Third Appellate District, which summarily denied his petition without opinion or citation to authority.  Ximenez's subsequent petition for habeas relief in the Supreme Court was summarily denied citing *In re Clark*, 855 P.2d 729 (Cal. 1993) and *In re Robbins*, 959 P.2d 311, 317-18 (Cal. 1998), on April 22, 2009.

As summarized by the California Court of Appeal, the facts underlying Ximenez's conviction are:

> The incidents giving rise to [Ximenez's] convictions occurred over the course of one night in November 2003, one month after [Ximenez] and his wife, G.F., had a baby. [Ximenez] had previously threatened and abused G.F., and on this occasion,

---

[2] *People v. Ximenez*, No. C049844, 2008 WL 762296 (Cal. Ct. App. Mar. 24, 2008).

he began to physically push her.  When she went to the telephone to call her mother, [Ximenez] told her she could not use the phone because he thought she was going to call the police.  G.F. took the phone into the bathroom and closed the door, but [Ximenez] yanked the phone cord and broke it.

G.F. left the apartment by herself and drove around to "cool down."  On her way home, she saw [Ximenez] walking outside in the freezing weather with their baby.  She stopped, took the baby from [Ximenez], and then drove back to the apartment quickly, hoping to be able to lock [Ximenez] out.  [Ximenez] arrived at the same time as G.F.

[Ximenez] and G.F. went into the bedroom, leaving the baby on the couch in the living room.  An argument ensued.  [Ximenez] picked up a pair of scissors and pushed G.F. on to the bed.  He put a pillow over G.F.'s face and tried to smother her.  At the same time, he stabbed the scissors into the pillow and the bedding, telling G.F. that he was going to "cut her face out," "cut her guts out," and "hand [G.F.] her intestines."  [Ximenez] also threatened to kill G.F. and their infant son.

At some point, as [Ximenez] sat on top of G.F., G.F. asked if she could check on the baby, who was in the living room.  [Ximenez] replied that the baby was already dead.  [Ximenez] later allowed G.F. to go into the living room, but he forced her to crawl there.

While G.F. was holding the baby, [Ximenez] began to pack the baby's diaper bag.  He then took the baby from G.F. and ordered G.F. to the car, threatening to kill the baby if she ran away.  G.F. complied because of [Ximenez's] threats.

[Ximenez] "peeled out" of the parking lot and sped through streets, running several red lights.  [Ximenez] got onto the freeway and drove at speeds of 90 to 100 miles per hour.  G.F. described Ximenez's driving as "crazy" and "reckless."  During the drive, [Ximenez] told G.F. that he was going to take her and the baby to the home of G.F.'s mother.

G.F., who was sitting in the back seat with the baby, pulled out one of the baby's extra diapers and wrote a message to her mother that said:  "[Ximenez] is trying to kill us."  She signed her name and wrote the time, 4:21 a.m., and added, "I love you."

They arrived at the home of G.F.'s mother at approximately 4:30 a .m.  G.F. handed the baby to her mother and went into the kitchen with [Ximenez].  G.F.'s mother came into the kitchen, got the diaper bag and went into her bedroom.  When she changed the baby, she saw the note that G.F. had written on the diaper.  She went back to the kitchen, but [Ximenez] and G.F. were not there.

At some point during the half hour that [Ximenez] and G.F. were at the apartment, [Ximenez] told G.F. to get gas money from her brother.  Her brother was asleep, but she woke him to ask for money and said something about being hurt or killed.  G.F. got the money and [Ximenez] then pushed G.F. out of the apartment and ordered her back into the car.  He still had the scissors with him, and G.F. complied because she was afraid that she or the baby would be hurt.  She hoped that her mother

would see the note she had written.  [Ximenez] held on to G.F. as they walked to the car.

After driving for some time, [Ximenez] ordered G.F. to drive the car because he was tired. As G.F. drove onto the freeway on-ramp, [Ximenez] threw the scissors from the car window.

At about 9:00 a.m., [Ximenez] dropped G.F. back at her mother's apartment. He returned there around noon.

G.F.'s mother had called the police after finding G.F.'s note, and officers subsequently arrested [Ximenez].

G.F. told Officer Lindner what had happened, and took him to her apartment. The pillow and bedding had holes in them, and the phone cord had been forcibly pulled apart.

Officers found a pair of scissors in the embankment near the highway on-ramp.

On November 25 and December 3, 2003, G.F. confirmed her account with victim advocates, making few revisions to Officer Lindner's report.  However, by the time of trial one year later, G.F. had recanted.  She testified that the statement she had given the police was not true, that the case had been blown out of proportion, that she did not want to testify against [Ximenez] and that she loved him.[3]

## II.  ISSUES PRESENTED/DEFENSES

In his Petition, Ximenez raises 14 enumerated grounds.  Ximenez challenges his April 2005 conviction and sentence in ten of the enumerated grounds: (1) denial of the right to a public trial; (2) denial of the right to counsel of his choosing; (3) insufficiency of the evidence to support a conviction for child endangerment; (4) insufficiency of the evidence to support a conviction for kidnapping; (5) the trial court improperly admitted evidence of G.F.'s prior, consistent statements; (6) the trial court had a duty to *sua sponte* instruct the jury that accomplice testimony must be corroborated; (7) prosecutorial misconduct in making improper statements during the closing argument; (8) the trial court should have stayed the sentence for his criminal-

---

[3] *Id.* at *1-2.

threats conviction pursuant to § 654;[4] (12) the prior strike enhancement was based upon an

invalid prior strike; and (13) ineffective assistance of trial and appellate counsel for failing to

attack the validity of Ximenez's 1996 conviction.  In the remaining grounds—(9), (10), (11), and

(14)—Ximenez challenges his 1996 conviction.[5]  Respondent contends that Ximenez's fifth and

sixth grounds are unexhausted and that he is collaterally barred from attacking his March 1996

conviction (ninth, tenth, eleventh, and fourteenth grounds).  Respondent raises no other

affirmative defense.[6]

### III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States" at the time the state court renders its decision or "was based

on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."[7]  The Supreme Court has explained that "clearly established Federal law" in

§ 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the

time of the relevant state-court decision."[8]  The holding must also be intended to be binding upon

the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

---

[4] In his Traverse, Ximenez withdraws his eighth ground.

[5] The record indicates that Ximenez is no longer in custody as a result of his 1996 conviction.

[6] *See* Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 5(b) (2011).

[7] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[8] *Williams*, 529 U.S. at 412 (alteration added).

power of the Supreme Court over federal courts.[9]  Thus, where holdings of the Supreme Court

regarding the issue presented on habeas review are lacking, "it cannot be said that the state court

'unreasonabl[y] appli[ed] clearly established Federal law.'"[10]  When a claim falls under the

"unreasonable application" prong, a state court's application of Supreme Court precedent must

be "objectively unreasonable," not just "incorrect or erroneous."[11]  The Supreme Court has made

clear that the objectively unreasonable standard is "a substantially higher threshold" than simply

believing that the state-court determination was incorrect.[12]  "[A]bsent a specific constitutional

violation, federal habeas corpus review of trial error is limited to whether the error 'so infected

the trial with unfairness as to make the resulting conviction a denial of due process.'"[13]  In a

federal habeas proceeding, the standard under which this Court must assess the prejudicial

impact of constitutional error in a state court criminal trial is whether the error had a substantial

and injurious effect or influence in determining the outcome.[14]  Because state court judgments of

---

[9] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[10] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[11] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[12] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[13] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[14] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

conviction and sentence carry a presumption of finality and legality, the petitioner has the burden

of showing by a preponderance of the evidence that he or she merits habeas relief.[15]

The Supreme Court recently underscored the magnitude of the deference required:

As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.* Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[16]

In applying this standard, this Court reviews the "last reasoned decision" by the state

court.[17]  State appellate court decisions that summarily affirm a lower court's opinion without

explanation are presumed to have adopted the reasoning of the lower court.[18]  This Court gives

---

[15] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[16] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[17] *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . . ").

[18] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an

(continued...)

the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[19]

Under California's unique habeas procedure, a prisoner who is denied habeas relief in the superior court files a new original petition for relief in the court of appeal.  If denied relief by the court of appeal, the defendant has the option of either filing a new original petition for habeas relief or a petition for review of the court of appeal's denial in the California Supreme Court.[20] This is considered as the functional equivalent of the appeal process.[21]  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[22]  This presumption applies to state-trial courts and appellate courts alike.[23]

---

[18](...continued)
unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

[19] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[20] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002) (citations omitted) (discussing California's "original writ" system).

[21] *See id.* at 222 ("Thus, typically a prisoner will seek habeas review in a lower court and later seek appellate review in a higher court . . . .").

[22] 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . ." (citing 28 U.S.C. § 2254(e)(1))).

[23] *See Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004) ("Stevenson does not address these factual findings, let alone challenge them with clear and convincing evidence. Accordingly, we presume them to be correct." (citing 28 U.S.C. § 2254(e)(1); *Pollard v. Galaza*, 290 F.3d 1030, 1035 (9th Cir. 2002))).

## IV.  DISCUSSION

**A.      Motion at Docket 48**

This Court granted Ximenez leave to submit evidence that he was not, in fact, represented by counsel in the proceedings leading to his 1996 conviction.  Despite several extensions of time within which to comply, Ximenez has not done so.  Respondent has submitted minutes from the trial court indicating that Ximenez was, in fact, represented by counsel at the time he entered his guilty plea and was sentenced.[24]  This Court then entered an Order accepting Respondent's submission of the minutes, and submitted the matter for a decision.  At Docket No. 48, Ximenez has requested reconsideration of that Order, requesting that this Court (1) order that the unredacted court tapes of the plea and sentencing proceedings in his 1996 conviction be produced, (2) appoint counsel to represent him in this proceeding, and (3) hold an evidentiary hearing on the issue whether he was represented by counsel.

At Docket No. 49 Ximenez has submitted documents that he contends show that he is somehow being maliciously denied copies of the 1996 proceedings.[25]  As Exhibit B to Docket No. 49, Ximenez has attached what he contends are redacted documents provided to him by the court reporter.  Included in Exhibit B are two copies of the transcript of the entry of his plea on

---

[24] Docket No. 46.

[25] In support of this contention, Ximenez attached copies of two letters received from the court reporter.  Exhibit C, dated July 5, 2011, informs Ximenez that he did not originally request copies of any transcripts other than those furnished.  Docket No. 49, at 81-82.  Exhibit E informs Ximenez of the names of the court reporters transcribing the additional proceedings Ximenez requested, and the requirements for obtaining the additional transcripts.  *Id.*  Nothing in either of these letter supports Ximenez's position that he is somehow being maliciously denied copies of those transcripts.

March 21, 1996, certified by the court reporter.[26]  This Court has reviewed those two transcripts, which are identical, and finds no evidence of redaction, whether by whiteout or otherwise.[27] There being no evidence before this Court that any transcript or other document relevant to the issue presented has been redacted or otherwise altered, there is no need to order that unredacted copies be provided.

Evidentiary Hearing

Ordinarily, a federal habeas proceeding is decided on the complete state-court record and a federal evidentiary hearing is required only if the trier of fact in the state proceeding has not developed the relevant facts after a full hearing.[28]  "Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings."[29]  In this case, Ximenez challenged the validity of his 1996 conviction in his two rounds of habeas petitions in the California Court of Appeal and California Supreme Court. Ximenez did not seek relief in the Sacramento County Superior Court before resorting to the

---

[26] Docket No. 49, at 60-69, 70-79.

[27] This Court does note that attached as Exhibit A to Docket No. 49 are copies of Minute Orders entered in those proceedings that have been redacted.  Ximemez has not, however, provided any argument as to how the redaction in those Minute Orders is at all relevant to the issue presented: whether he was represented by counsel at the time his plea was entered.

[28] *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011); *see Townsend v. Sain*, 372 U.S. 293, 312-13, 319 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *superceded in part by statute*, 28 U.S.C. 2254(e)(2) (1996).

[29] *Williams v. Taylor*, 529 U.S. 420, 437 (2000) (quoted with approval in *Pinholster*, 131 S. Ct. at 1401); *see Richter*, 131 S. Ct. at 787 (noting that the basic structure of federal habeas jurisdiction is designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions); *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977) ("[T]he state trial on the merits [should be] the 'main event,' so to speak, rather than a 'tryout on the road' for what will later be the determinative federal habeas hearing.").

California appellate courts.  Ximenez did not request an evidentiary hearing in the state-appellate courts.  Thus, it cannot be said that the state courts precluded him from developing the factual basis for his claim.[30]  It does not appear from the record that the California appellate courts made any independent evidentiary findings.  As discussed further below, Ximenez has not identified any factual conflict that would require this Court to hold an evidentiary hearing to resolve or that would require this Court to review the unredacted transcripts of the proceedings leading to Ximenez's 1996 conviction.  The request to compel production of the transcript of the plea and sentencing proceedings in the 1996 conviction and for an evidentiary hearing will be denied.[31]

     Appointment of Counsel.

There is no constitutional right to counsel in federal habeas proceedings.[32]  Appointment of counsel is not required in a habeas corpus proceeding in the absence of an order granting discovery or an evidentiary hearing.[33]  This Court may appoint counsel under the Criminal Justice

---

[30] *See Pinholster*, 131 S. Ct. at 1417 n.5 (Sotomayer, J., dissenting) (assuming that the majority did not intend to preclude an evidentiary hearing when the petitioner's ability to develop the facts was the fault of the state court itself).

[31] This Court has as part of the record before it Ximenez's habeas petitions challenging his 1996 conviction filed in the California Court of Appeal and California Supreme Court. Those petitions do not include a copy of the transcripts he now seeks.  Nor does it appear from those petitions that Ximenez requested that copies of the relevant transcripts from the 1996 proceedings be produced.

[32] *See Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007) (citing *Coleman v. Thompson*, 501 U.S. 722, 756-57 (1991)).

[33] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rules 6(a), 8(c) (2011).

Act in this case if the Court determines that the interests of justice so require.[34]  This Court does

not so determine.  Ximenez's request for the appointment of counsel will be denied.

Having considered Ximenez's arguments, this Court will deny Ximenez's motion at

Docket No. 48 in its entirety

**B.      Exhaustion**

Respondent contends that because Ximenez failed to present his fifth (improper

admission of prior consistent statement) and sixth (failure to instruct on necessity for

corroboration of accomplice testimony) grounds to the state courts, he has failed to exhaust his

state-court remedies.  This Court agrees.  This Court may not consider claims that have not been

fairly presented to the state courts.[35]  Exhaustion of state remedies requires the petitioner to fairly

present federal claims to the state courts in order to give the state the opportunity to pass upon

and correct alleged violations of its prisoners' federal rights.[36]  A petitioner fairly presents a claim

to the state court for purposes of satisfying the exhaustion requirement if he presents the claim:

(1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual

and legal basis for the claim.[37]

In this circuit a three step procedure for mixed petitions has been adopted, allowing: (1) a

petitioner to amend his petition to delete any unexhausted claims; (2) the court in its discretion to

---

[34] 28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B); *see Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983) ("In deciding whether to appoint counsel in a habeas proceeding, the district court must evaluate the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved.").

[35] 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).

[36] *Duncan v. Henry,* 513 U.S. 364, 365 (1995).

[37] *See* 28 U.S.C. § 2254(e); *Weaver v. Thompson,* 513 U.S. 364, 364 (9th Cir. 1999).

stay and hold in abeyance the amended, fully exhausted petition, providing the petitioner the opportunity to proceed to state court to exhaust the deleted claims; and (3) once the claims have been exhausted in state court, the petitioner to return to federal court and amend his federal petition to include the newly-exhausted claims.[38]  The three-step *Kelly* procedure survives *Rhines*,[39] and the "good cause" limitation does not apply.[40]

In his Traverse, Ximenez requests that this Court stay and hold in abeyance his Petition while he exhausts his state-court remedies on his fifth and sixth grounds.  Upon the request of the petitioner, this Court may stay a mixed habeas corpus petition and hold the entire petition—exhausted and unexhausted claims alike—in abeyance while the petitioner exhausts his unexhausted claims.[41]  A stay and abeyance is available only in limited circumstances.  First, there must be good cause for the petitioner's failure to exhaust his claims first in the state courts.[42]  Second, even if good cause is shown, a district court would abuse its discretion if it were to grant a stay as to unexhausted claims that are plainly meritless.[43]  In this case, Ximenez has failed to show good cause for his failure to exhaust his state-court remedies.  More importantly, however, is that Ximenez's claims are meritless and a "stay and abey" would serve no purpose.

---

[38] *Kelly v. Small*, 315 F.3d 1063, 1070-71 (9th Cir. 2003), *overruled on other grounds by Robbins v. Carey*, 481 F.3d 1143, 1149 (9th Cir. 2007) (reaffirming *Kelly*, but rejecting the requirement that district courts *sua sponte* consider implementing the three-step procedure).

[39] *Robbins*, 481 F.3d at 1149 (referring to *Rhines v. Weber*, 544 U.S. 269 (2005)).

[40] *King v. Ryan*, 564 F.3d 1133, 1140 (9th Cir. 2009).

[41] *Rhines*, 544 U.S. at 277.

[42] *Id.*

[43] *Id.* (citing 28 U.S.C. § 2254(b)(2)).

13

Ground 5:  Improper Admission of Prior Consistent Statements

Ximenez contends that the trial court erred in allowing the prosecution to introduce statements made by G.F. to police that were consistent with her trial testimony.  Ximenez argues, without elaboration or explanation, that the evidence was inadmissible under the "prior consistent statement" rule.[44]  Although Ximenez presented this issue on appeal, he did so entirely upon state evidentiary law, not constitutional grounds.

California Evidence Code § 791 provides:

> Evidence of a statement previously made by a witness that is consistent with his testimony at the hearing is inadmissible to support his credibility unless it is offered after:
>      (a) Evidence of a statement made by him that is inconsistent with any part of his testimony at the hearing has been admitted for the purpose of attacking his credibility, and the statement was made before the alleged inconsistent statement; or
>      (b) An express or implied charge has been made that his testimony at the hearing is recently fabricated or is influenced by bias or other improper motive, and the statement was made before the bias, motive for fabrication, or other improper motive is alleged to have arisen.

Ximenez, argued that the prior consistent statements of G.F. were inadmissible under subdivision (a).  The prosecutor argued that those statement were admissible under subdivision (b).  The California Court of Appeal rejected both parties' arguments holding that the challenged statements were necessary only for the non-hearsay purpose of giving context to other admissible testimony.  Thus, the hearsay rule and the exceptions to it were inapplicable.[45]

---

[44] Cal. Evid. Code § 791(b).

[45] *People v. Ximenez*, No. C04984, 2008 WL 762296, at *11 (Cal. Ct. App. Mar. 24, 2008).

14

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts."[46]  "The introduction of unfairly prejudicial evidence against a defendant in a criminal trial . . . does not amount to a violation of due process unless the evidence is so extremely unfair that its admission violates fundamental conceptions of justice."[47]  "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."[48]  In criminal actions, "[t]he States are free to provide such procedures as they choose, including rules of evidence, provided that none of them infringes a guarantee in the Federal Constitution."[49]  The Supreme Court has made clear that federal habeas power does not allow granting relief on the basis of a belief that the state-trial court incorrectly interpreted the state-evidence code in ruling on the admissibility of evidence.[50]  In this context, the Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly," limiting them to specific guarantees enumerated in the bill of rights.[51]  For example, the Supreme Court has barred the introduction of evidence in state-court-criminal proceedings that violated the Fourth Amendment

---

[46] *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).

[47] *Dunnigan v. Keane,* 137 F.3d 117, 125 (2d Cir. 1998) (citations omitted).

[48] *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983); *see also Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

[49] *Burgett v. Texas*, 389 U.S. 109, 113-14 (1967).

[50] *McGuire*, 502 U.S. at 72; *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

[51] *McGuire*, 502 U.S. at 73 (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

(search and seizure),[52] Fifth Amendment (confessions),[53] Sixth Amendment (Confrontation

Clause),[54] and Sixth Amendment (right to counsel).[55]  None of these infractions are implicated

under the facts in this case.

Even if the Court of Appeal were incorrect in holding that the challenged statements did

not constitute hearsay, Ximenez would not prevail.  Under California law, a trial court's ruling

on the admission of evidence under an exception to the hearsay rule is reviewed for an abuse of

discretion.[56]  Although the Ninth Circuit has suggested that an abuse of discretion may also

amount to a constitutional violation,[57] the Supreme Court has never held that abuse of discretion

is an appropriate basis for granting federal habeas relief.  Indeed, quite to the contrary, the

Supreme Court has strongly suggested that, while abuse of discretion is an appropriate standard

on direct review, in a federal habeas proceeding it is not.[58]  Because he fails to present an issue of

---

[52] *See generally Mapp v. Ohio*, 367 U.S. 643 (1961).

[53] *See generally Miranda v. Arizona*, 384 U.S. 436 (1966).

[54] *See generally Crawford v. Washington*, 541 U.S. 36 (2004); *Pointer v. Texas*, 380 U.S. 400 (1965) (transcript of preliminary hearing without assistance of counsel to confront and cross-examine absent witness inadmissible).

[55] *See generally Burgett*, 389 U.S. at 114-15 (evidence of prior conviction obtained in violation of Sixth Amendment right to counsel inadmissible).

[56] *People v. Alexander*, 235 P.3d 873, 926 (Cal. 2010) (citing *People v. Martinez*, 990 P.2d 563, 573 (Cal. 2000)).

[57] *See Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc).

[58] *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) ("It is not even whether it was an abuse of discretion for her to have done so—the applicable standard on direct review.  The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law." (citing § 2254(d)(1))).

constitutional dimension, Ximenez would not be entitled to relief under his fifth ground in any event.

<u>Ground 6:  Instruction on Corroboration of Accomplice Testimony</u>

Under California law, when there is sufficient evidence that a witness is an accomplice, the testimony of the witness must be corroborated.[59]  First, the California Court of Appeal held that the witness was not an accomplice within the scope of the California evidence rule.[60]  A holding by which this Court is bound.[61]

Second, there is no federal constitutional rule requiring corroboration of accomplice testimony.[62]  Rather, Ximenez "would have [this Court] abandon [the] time honored rule that the uncorroborated testimony of an accomplice is sufficient to convict."[63]  In this case, Ximenez's claim is based solely upon California state law concerning accomplice status and the requirement

---

[59] Cal. Evid. Code § 1111.

[60] *People v. Ximenez*, No. C04984, 2008 WL 762296, at *11-12 (Cal. Ct. App. Mar. 24, 2008).

[61] *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) ("The short of the matter is that the responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts, and is no part of the Ninth Circuit's business."); *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("[S]tate courts are the ultimate expositors of state law."))); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief).

[62] *See Caminetti v. United States*, 242 U.S. 470, 495 (1917).

[63] *United States v. Galardi*, 476 F.2d 1072, 1075 (9th Cir.1973); *see also Caminetti*, 242 U.S. at 495 ("[T]here is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them.").

of corroboration.  As there is no federal constitutional question here, there can be no basis for habeas relief.

Because a stay and abey is not available, this Court accepts Ximenez's alternative request to dismiss the two unexhausted claims and proceed on the exhausted claims.  Accordingly, Ximenez's fifth and sixth grounds will be dismissed.

**C.      Collateral Bar of March 1996 Conviction**

In March 1996 Ximenez was convicted on a guilty plea of one count of committing a lewd and lascivious act with a minor, Cal. Penal Code § 288(a).  This conviction constituted one of the three "strikes" upon which his prior conviction enhancement was based.  Ximenez's ninth through sixteenth grounds all turn on a single issue: the validity of his 1996 conviction.  Ximenez attacks this enhancement in this twelfth ground and the effectiveness of his trial and appellate counsel for failing to raise the issue of the validity of his 1996 conviction in his thirteenth ground.  In his ninth, tenth, eleventh, and fourteenth grounds Ximenez directly attacks the validity of his 1996 conviction on various theories that he was denied the effective assistance counsel in that proceeding.  Thus, if the 1996 conviction was valid, Ximenez's twelfth ground necessarily fails.  Likewise, since the failure to raise a meritless claim does not constitute ineffective assistance of counsel,[64] Ximenez's thirteenth ground will also fail.  Conversely, if Ximenez prevails on his claim that his 1996 conviction was invalid, Ximenez will also prevail on both his twelfth and thirteenth grounds, and the writ must be granted.

---

[64] *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).

18

<u>Grounds 9, 10, 11, and 14:  Validity of the March 1996 Conviction</u>

Ximenez's sentence was enhanced as a result of his 1996 conviction.  Ximenez contends that, because he was denied counsel in 1996, his 1996 conviction was invalid.  Consequently, Ximenez argues that his sentence should not have been enhanced.  Respondent contends that Ximenez's attack on his 1996 conviction is not cognizable in this proceeding.  Under Supreme Court precedent, generally a petitioner may not collaterally challenge the validity of the prior conviction where that prior conviction is no longer open to direct or collateral attack in its own right.[65]  The only recognized exception to that rule is when there is a failure to appoint counsel.[66]  The Supreme Court has noted, however, that "'there may be rare cases in which no channel of review was actually available to a defendant with respect to a prior conviction due to no fault of his own,' in which case a prisoner may be able to use [a petition under § 2254] to challenge the prior conviction as well as the [] sentence based on it."[67]  There is nothing in the record before this Court to indicate that he lacked a channel of review to challenge his 1996 conviction on the basis he now attempts to challenge it.  Thus, the sole basis upon which Ximenez may challenge his 1996 conviction in this proceeding is that he was denied the assistance of counsel, not that he was denied the effective assistance of counsel.[68]

---

[65] *Lackawanna County Dist. Attorney v. Coss,* 532 U.S. 394, 401-04 (2001) (applying *Daniels v. United States*, 532 U.S. 374, 382 (2001)); *Nunes v. Ramirez-Palmer*, 485 F.3d 432, 443 (9th Cir. 2007); *see Custis v. United States*, 511 U.S. 485, 496-97 (1994).

[66] *Johnson v. United States*, 544 U.S. 295, 303-04 (2005) (citing *Daniels* and recognizing the special status of *Gideon v. Wainwright*, 372 U.S. 335 (1963)).

[67] *Johnson*, 544 U.S. at 304 n.4 (quoting *Daniels*, 532 U.S. at 383-84).

[68] This Court notes that, because Ximenez's 1996 conviction is no longer open to attack through federal habeas proceedings, this case differs from *Gretzler v. Stewart*, 112 F.3d 992,

(continued...)

During the course of the proceedings leading to his 1996 conviction, Ximenez was represented by three different public defenders.  One of these public defenders appeared on Ximenez's behalf at each of the critical phases of the proceeding, including the entry of Ximenez's guilty plea and the imposition of sentence.  The trial court in the proceeding that led to Ximenez's conviction in 1996 clearly appointed counsel, and counsel appeared on Ximenez's behalf.  Ximenez does not seriously dispute this fact.[69]

Ximenez challenged his 1996 conviction in both rounds of his habeas petitions in the California appellate courts on the ground that it was a product of the ineffective assistance of counsel.  In the first round, the California Supreme Court denied Ximenez relief citing *Robbins* and *Duvall*.  Under *Robbins*:

> [A] habeas corpus petition is not entitled to a presumption of timeliness if it is filed more than 90 days after the final due date for the filing of appellant's reply brief on the direct appeal. In such a case, to avoid the bar of untimeliness with respect to each claim, the *petitioner* has the burden of establishing (i) absence of substantial delay, (ii) good cause for the delay, or (iii) that the claim falls within an exception to the bar of untimeliness.[70]

Under *Duvall*, a habeas petitioner must attach the documentary evidence or affidavits that support the claim to the petition.[71]

---

[68](...continued)
1004-05 (9th Cir. 1997).  Applying the still open to attack exception in *Custis*, the court considered Gretzler's ineffective assistance of counsel attack on his earlier conviction.

[69] According to Ximenez, the third public defender took over his case just prior to the preliminary hearing.

[70] *In re Robbins*, 959 P.2d 311, 317 (Cal. 1998).

[71] *People v. Duvall*, 886 P.2d 1252, 1258 (Cal. 1995).

20

In the second round, the California Supreme Court denied relief citing *Clark* and *Robbins*.  Under *Clark*, the California Supreme Court will not ordinarily consider delayed or successive petitions for habeas relief.[72]

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."[73]  This Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims . . . ."[74]  California's untimeliness rule under *Robbins* is an adequate and independent state procedural ground.[75]  Respondent has not asserted adequate and independent state law grounds as an affirmative defense, and this Court declines to apply it *sua sponte*.[76]

When there is no reasoned state-court decision denying an issue presented to the state, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state law procedural principles to the contrary."[77]  In this case, however, it is clear that the California Supreme Court declined to address Ximenez's challenge to his 1996

---

[72] *In re Clark*, 855 P.2d 729, 745-54 (Cal. 1993).

[73] *Coleman v. Thompson,* 501 U.S. 722, 729 (1991).

[74] *Sawyer v. Whitley,* 505 U.S. 333, 338 (1992) (citation omitted).

[75] *Walker v. Martin*, 131 S. Ct. 1120, 1128-30 (2011), *abrogating Townsend v. Knowles*, 562 F.3d 1200 (9th Cir. 2009).

[76] *See Bennett v. Mueller*, 322 F.3d 573, 585 (9th Cir. 2003).

[77] *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).

conviction solely upon procedural grounds; therefore, the presumption does not apply. Consequently, this Court must review the issue de novo.[78]

According to Ximenez, he was dissatisfied with the representation he was provided by the first two attorneys in the public defender's office and requested that the trial court either appoint another public defender or an attorney from the public defender's panel, or allow him to proceed *pro se* under *Faretta*.[79]  The trial court denied the *Faretta* request, and appointed a third attorney from the public defender's office.  According to Ximenez, he wanted to proceed to trial and put the minor child on the stand, but the third public defender refused to put the minor child on the stand, refused to cooperate with Ximenez or make any preparation for trial, and insisted that Ximenez accept the plea offer.  Ximenez complained to the trial judge who, after conducting a hearing, initially removed the third public defender, but then reinstated him.[80]  According to Ximenez, by forcing him to accept continued representation by counsel he believed he could not count on to represent his best interests or assist Ximenez in establishing his innocence, Ximenez was "coerced" into entering a guilty plea instead of proceeding to a jury trial.  Ximenez argues that this was an abuse of discretion.  Although abuse of discretion is an appropriate standard on direct review, in a federal habeas proceeding it is not.[81]

Reduced to its essence, Ximenez's argument *vis-a-vis* his lack of representation by counsel in the proceedings leading to his conviction in 1996 is that counsel was ineffective, not

---

[78] *Williams v. Cavazos*, 646 F.3d 626, 636-37 (9th Cir. 2011).

[79] *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975).

[80] The transcript of this proceeding has not been provided, nor has Ximenez requested this Court order that it be produced.

[81] *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010).

that the trial court declined to appoint counsel.  The Supreme Court has made clear that a collateral attack on a prior conviction used to enhance a sentence in federal court is limited to a *Gideon* violation, i.e., denial of the right to appointed counsel.[82]  While Ximenez's allegations may be sufficient to establish ineffective assistance of counsel, they are insufficient to support a finding that he was denied appointed counsel.  Because the ninth, tenth, eleventh, and fourteenth grounds are collaterally barred, Ximenez is not entitled to relief on any of those four grounds.

Ground 12:  Prior Strike (1996 Conviction)

Ximenez contends that, because his 1996 conviction was invalid, it could not be used as one of the "strikes" to sentence him under California's "three-strikes" law.  Suffice it to say that, because Ximenez has failed to establish that his 1996 conviction was constitutionally invalid, the Sacramento County Superior Court did not err in using it in imposing sentence.  Ximenez is not entitled to relief under his twelfth ground.

Ground 13:  Ineffective Assistance of Counsel (Failure to Challenge 1996 Conviction)

Ximenez contends that his trial and appellate counsel in the case at issue in this proceeding (his 2005 conviction) were ineffective for failing to challenge the validity of his 1996 conviction.  It does not appear that Ximenez raised this ground in either his direct appeal or his two rounds of habeas petitions in the state-appellate courts.  Thus, it plainly appears from the record that Ximenez has not exhausted his state-court remedies with respect to this ground.  Respondent does not, however, raise exhaustion as an affirmative defense to this ground.  Indeed, Respondent does not address this ground at all in his response.

---

[82] *Custis v. United States*, 511 U.S. 485, 496-97 (1994).

23

Under *Strickland*, to demonstrate ineffective assistance of counsel, Ximenez must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[83]   A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[84]   Ximenez must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[85]   An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either one of the *Strickland* prongs.[86]

In this case, Ximenez has failed to establish the second *Strickland* prong—prejudice. Given the fact that the California Supreme Court denied Ximenez's challenge to his 1996 conviction in his habeas proceeding, it follows, *a fortiori*, that had Ximenez raised his claim on direct appeal, it would likewise have failed.  The California Supreme Court has made clear that, even in a capital case, in collaterally attacking a prior conviction the defendant bears the burden of "establish[ing] a violation of his or her rights that so departed from constitutional requirements as to justify striking the prior conviction."[87]   Because Ximenez has failed to establish that he was denied the assistance of appointed counsel, as opposed to arguing that he

---

[83] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[84] *Id*.

[85] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[86] *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

[87] *People v. Horton*, 906 P.2d 478, 521 (Cal. 1995) (internal quotation marks and citations omitted).

was denied the *effective* assistance of counsel, there is no basis to support a finding by this Court

that, had Ximenez's trial and appellate counsel challenged his 1996 conviction, it would have

been any more successful than the same challenge raised and rejected in the state-habeas

petitions.  The failure to raise a meritless claim does not constitute ineffective assistance of

counsel.[88]  Ximenez is not entitled to relief under his thirteenth ground.

**D.     Merits**

Ground 1:  Denial of a Public Trial

The trial court excluded Ximenez's mother from the courtroom for one day.[89]  The next

day the trial court relented and permitted Ximenez's mother to be present in the courtroom for

the remainder of the trial.  Ximenez argues that the exclusion of his mother from the courtroom

for one day of trial violated his right to a public trial.  The California Court of Appeal rejected

Ximenez's argument, holding:

> "Every person charged with a criminal offense has a constitutional right to a
> public trial, that is, a trial which is open to the general public at all times.  (See U.S.
> Const., amends. VI, XIV; Cal. Const., art. I, § 15; see also Pen.Code, § 686, subd.
> 1.)"  (*People v. Woodward* (1992) 4 Cal.4th 376, 382.)  "The Sixth Amendment
> public trial guarantee creates a 'presumption of openness' that can be rebutted only
> by a showing that exclusion of the public was necessary to protect some 'higher
> value,' such as the [Ximenez's] right to a fair trial, or the government's interest in
> preserving the confidentiality of the proceedings.  [Citation.]  When such a 'higher
> value' is advanced, the trial court must balance the competing interests and allow a
> form of exclusion no broader than needed to protect those interests."  (*People v.*

---

[88] See *Strickland*, 466 U.S. at 687 (trial counsel); *Jones v. Barnes*, 463 U.S. 745, 751-52
(1983) (appellate counsel).

[89] Because Ximenez does not challenge the reason for excluding his mother in this
proceeding, the explanation for the need or cause for excluding the mother is irrelevant to the
issue before this Court.  It is also well known to the parties and set forth in detail in the decision
of the California Court of Appeal.  It is, therefore, omitted from this discussion.

*Woodward, supra,* 4 Cal.4th at p. 383; see *Waller v. Georgia* (1984) 467 U.S. 39, 45 [81 L.Ed.2d 31, 38].)

That is precisely what the court did here.  The court found that [Ximenez's] mother had concocted a story of jury misconduct in order to have jurors removed. The court was concerned that [Ximenez's] mother might again try to interfere with the trial, and was also concerned that the challenged jurors might be distracted by having their accuser sitting in the courtroom.  The court recognized [Ximenez's] right to an open courtroom and public trial, and [Ximenez's] right to have family members present.  It also recognized the need to prevent an individual from interfering with the right to a fair trial and an orderly trial process.  The court therefore crafted a limited remedy by excluding [Ximenez's] mother from the proceedings for one day.  The court's order did not affect any other spectators or close the courtroom to the general public, and its order was of brief duration.  The exclusion of [Ximenez's] mother from the courtroom for one day did not implicate any of the rationales underlying the right to public trial.  """"The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions . . . .,"""  [Citations.]  [¶]  In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury."  (*Waller v. Georgia, supra,* 467 U.S. at p. 46, [81 L.Ed.2d at p. 38], fn. omitted.)  The exclusion of [Ximenez's] mother did not affect any of these goals.

The trial court properly weighed the need for a public trial against the need for a fair and orderly trial, imposed a narrow and carefully tailored remedy, and explained the reasons for its order.  (See *Waller v. Georgia, supra,* 467 U.S. at p. 48 [81 L.Ed.2d at p. 39].)  Under these circumstances, the temporary exclusion from the courtroom of [Ximenez's] mother did not violate [Ximenez's] right to a public trial. (See *People v. Holloway* (2004) 33 Cal.4th 96, 148 [temporary exclusion of single spectator to prevent disruptive displays did not infringe on public trial right]; *People v. Woodward, supra,* 4 Cal.4th at pp. 385-386 [temporary closure of courtroom to new spectators to avoid interruptions during closing arguments did not violate public trial guarantee].)[90]

A criminal defendant has a constitutionally protected right to a public trial, made

applicable to the states under the Fourteenth Amendment.[91]  However, the right to a public trial is

---

[90] *People v. Ximenez*, No. C049844, 2008 WL 762296, at *6-7 (Cal. Ct. App. Mar. 24, 2008).

[91] *Waller v. Georgia*, 467 U.S. 39, 44-45 (1984); *In re Oliver*, 333 U.S. 257, 268-73

(continued...)

not absolute and "the right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information.  Such circumstances will be rare, however, and the balance of interests must be struck with special care."[92]  The Supreme Court has articulated the applicable rule as:

> The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.  The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.[93]

Additionally, there must be "an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure."[94]

Applying *Waller* to the record in this case, this Court cannot find that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court

---

[91](...continued)
(1948).

[92] *Waller*, 467 U.S. at 45.

[93] *Press-Enterprise Co. v. Superior Court of California, Riverside County*, 464 U.S. 501, 510 (1984) (quoted in *Waller*, 467 U.S. at 45).

[94] *Waller*, 467 U.S. at 48.

proceeding."[95]   Nor can this Court find that the state court unreasonably applied the correct legal

principles to the facts of Ximenez's case within the scope of *Andrade-Williams-Schriro-Richter*,

i.e., the state court decision was not more than incorrect or erroneous, its application of clearly

established federal law was not objectively unreasonable.

<u>Ground 2:  Denial of Right to Counsel of Choosing</u>

Ximenez contends that he was denied the right to retain counsel of his own choice.  The

facts concerning this issue are, as summarized by the California Court of Appeal:[96]

> The day trial began, [Ximenez] sought leave from the court to obtain a private
> attorney.  [Ximenez] said that his family had finally been able to raise the needed
> funds, and that he believed that a private attorney would be "a little more aggressive"
> than the public defender.  According to defense counsel, [Ximenez's] mother
> indicated that the family had met the previous day with Attorney Dan Brace, and
> Brace had agreed to represent [Ximenez].  The retainer was being wired to Brace that
> morning.  Attorney Brace did not appear in court and did not seek to make a special
> appearance to request a continuance, nor did he submit any documentation verifying
> his willingness to represent [Ximenez].
>
> The prosecutor responded that [Ximenez's] request was untimely.  She
> observed that the first trial setting was held nine months earlier, and no request to
> retain outside counsel had been made at any time during the ensuing months.
> Witnesses had been subpoenaed and ordered back each time the case had been
> continued.
>
> The court noted that [Ximenez's] request was essentially coming on the third
> day of trial, with the first two days having been spent on preliminary motions and in
> limine matters.  The case had been sent out for trial 11 times before, but [Ximenez]
> had never alerted the court that his family was trying to hire a private attorney.
>
> The court found that [Ximenez's] request was untimely.  The court
> commented that without any information from Attorney Brace, it was unable to
> assess the effect of any further delay in trial.  It was unable to "reset the matter for
> trial or have any idea of how much a continuance we would be talking about.
> Because part of the issue of timeliness and prejudice is the issue of whether or not
> there would be an undue delay of this trial in order to allow private counsel."  The

---

[95] 28 U.S.C. § 2254(d).

[96] Ximenez does not challenge these factual findings.  Accordingly, this Court must
accept them. 28 U.S.C. § 2254(e)(1).

court thought that new counsel would require at least four weeks to prepare, which would result in an undue delay of the trial.

The court concluded, "[I]n light of the fact that this matter has already proceeded partially to trial, at least in terms of undue consumption of court time, and simply the failure to bring it in a more timely fashion this Court is going to deny that request due to your request for private counsel at this—beyond the 11th hour of your case."[97]

In rejecting Ximenez's arguments, the Court of Appeal held:

The right to effective assistance of counsel includes the right to retain counsel of choice (*People v. Courts* (1985) 37 Cal.3d 784, 789), and "trial courts have the responsibility to protect a financially able individual's right to appear and defend with counsel of his own choosing." (*Id.* at p. 790.) Limitations on this right are "carefully circumscribed. Thus, the right 'can constitutionally be forced to yield *only* when it will result in significant prejudice to the defendant himself or in a disruption of the orderly processes of justice unreasonable under the circumstances of the particular case.' [Citations.]" (*Ibid.*) "'Due process is not denied every defendant who is refused the right to defend himself by means of his chosen retained counsel; other factors, including the speedy disposition of criminal charges, demand recognition, particularly where defendant is inexcusably dilatory in securing legal representation. [Citation.]'" (*People v. Murphy* (1973) 35 Cal.App.3d 905, 915.)

The burden is on a defendant to establish an abuse of discretion in denying a request for a change of counsel; absent such a showing, a reviewing court will not disturb the trial court's determination. (*People v. Murphy, supra,* 35 Cal.App.3d at p. 915.)

Similar principles apply in the context of continuances. A trial court's decision to deny a request for a continuance to seek private counsel is reviewed under an abuse of discretion standard. (*People v. Pigage* (2003) 112 Cal.App.4th 1359, 1367.) "Generally, the granting of a continuance is within the discretion of the trial court. [Citations.] A continuance may be denied if the accused is 'unjustifiably dilatory' in obtaining counsel, or 'if he arbitrarily chooses to substitute counsel at the time of trial.' [Citation.] [¶] However, 'a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.' [Citation.] For this reason, trial courts should accommodate such requests—when they are linked to an assertion of the right to retained counsel—'to the fullest extent consistent with effective judicial administration.' [Citation.]

"In deciding whether the denial of a continuance was so arbitrary as to violate due process, the reviewing court looks to the circumstances of each case,

---

[97] *People v. Ximenez*, No. C049844, 2008 WL 762296, at *3 (Cal. Ct. App. Mar. 24, 2008).

"'particularly in the reasons presented to the trial judge at the time the request [was] denied.'"  [Citation.]"  (*People v. Courts, supra,* 37 Cal.3d at pp. 790-791.)

The trial court did not abuse its discretion in denying [Ximenez's] motion. [Ximenez] had known for months that his case was ready to go to trial, but did not indicate any desire to retain an attorney before this motion was made.  Preliminary matters and in limine motions had already been addressed and voir dire was about to start.  [Ximenez's] only explanation for the delay was that financial and family problems presented difficulties in raising the needed funds.  But these problems would not have precluded [Ximenez] from giving some indication that his family wanted to try to hire an attorney.

[Ximenez] asserts that his motion was timely because the information had been amended the day before to add a second prior conviction, and that a new attorney was necessary to handle the now more complex case.  But [Ximenez] offered no such rationale to the trial court.  [Ximenez] said only that he and his mother thought that a private attorney would be more aggressive in handling his case, and that they had wanted to use a private attorney all along but could not, until the previous day, afford one.  There was no suggestion that the addition of another prior offense meant that his case had suddenly become too complicated for his appointed counsel to handle, nor can we imagine that to have been the case.

More importantly, the court was given no information to enable it to determine how much additional time Attorney Brace would have required before proceeding to trial.  [Ximenez] contends that his motion did not involve a request for continuance, a claim that ignores reality.  The need for a continuance was implicit in [Ximenez's] motion: trial was scheduled to start and the attorney [Ximenez] wanted to represent him was not there.  The court appropriately estimated that any competent attorney would require at least a month of preparation before trial could begin.

Given the number of delays that had already occurred, the timing of [Ximenez's] request, the lack of any definitive evidence that Attorney Brace was in fact willing to represent [Ximenez], and the complete absence of any information regarding the effect a substitution might have on scheduling, the trial court acted well within its discretion in denying [Ximenez's] motion.  (See *People v. Pigage, supra,* 112 Cal.App.4th at p. 1367.)  [Ximenez's] claim to the contrary is meritless.[98]

The Supreme Court has held that the Sixth Amendment's right to counsel includes a right to counsel of one's choice.[99]  However "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the

---

[98] *Id.* at *3-5.

[99] *See generally Wheat v. United States*, 486 U.S. 153 (1988).

Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."[100]  Thus, "[t]he Sixth Amendment right to choose one's own counsel is circumscribed in several important respects."[101]  Indeed, the Supreme Court has established that a trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar."[102]  As such, trial courts retain the discretion to "make scheduling and other decisions that effectively exclude a defendant's first choice of counsel."[103]

In this case, the most that could be said about Ximenez's position is that the trial court abused its discretion in denying his eleventh hour request to substitute counsel.  Abuse of discretion is not a ground for relief in a federal habeas proceeding.[104]  Because he has failed to raise an issue of constitutional dimension, Ximenez is not entitled to relief under his second ground.

Ground 3:  Insufficiency of the Evidence (Child Endangerment); Ground 4:  Insufficiency of the Evidence (Kidnapping)

Ximenez contends that there was insufficient evidence to support his conviction of either child endangerment or kidnapping.  The California Court of Appeal rejected Ximenez's arguments, holding:

"The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the

---

[100] *Id.* at 159.

[101] *Id.*

[102] *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006) (citations omitted).

[103] *Id.*

[104] *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010).

defendant guilty beyond a reasonable doubt.  [Citations.]  On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.  [Citation.]

"Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends.  [Citation.]  Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder.  [Citations.]."  (*People v. Jones* (1990) 51 Cal.3d 294, 314.)

We examine the evidence supporting each of the challenged convictions.

A.  Child Endangerment

The child endangerment statute is violated when a person "who, under circumstances or conditions likely to produce great bodily harm or death, . . . willfully causes or permits [a] child to be placed in a situation where his or her person or health is endangered[.]"  (§ 273a, subd. (a).)

According to G.F.'s statement to police officers, [Ximenez] forced G.F. and the baby from their apartment into their car.  [Ximenez] peeled out the parking lot, ran through red lights on surface streets, and then drove 90-100 miles per hour on the freeway.  G.F. described [Ximenez's] driving as "reckless" and "crazy."

[Ximenez] contends that his driving did not endanger the life of his son because the trip from the apartment to the home of G.F.'s mother occurred at 4:00 a.m. when the streets were deserted and there was no danger of a collision.

No evidence was presented regarding traffic conditions, but it is unlikely that [Ximenez's] car was the only vehicle on a major freeway, regardless of the hour.  More importantly, the risk of great bodily harm or death came not only from a multi-car collision, but from the possibility that a driver might lose control of a car while driving at a high speed.

The fact that no injury actually occurred was indeed fortunate; it does not, however, absolve [Ximenez] of liability for child endangerment.  (See *People v. Valdez* (2002) 27 Cal.4th 778, 784.)  [Ximenez's] driving, as described by G.F., posed a serious and well-founded risk of great bodily harm or death (see *People v. Wilson* (2006) 138 Cal.App.4th 1197, 1204), and substantial evidence supports his conviction for child endangerment.

B.  Kidnapping

[Ximenez] contends that his conviction for kidnapping must be reversed because there was insufficient evidence of force or fear.  We disagree.

Section 207, subdivision (a) provides in relevant part: "Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person . . . into another part of the same county, is guilty of kidnapping."

"As can be seen by this language, in order to constitute . . . kidnapping, the victim's movement must be accomplished by force or any other means instilling fear . . . .  As [prior California Supreme Court] cases explain, the force used against the victim 'need not be physical.  The movement is forcible where it is accomplished through the giving of orders which the victim feels compelled to obey because he or she fears harm or injury from the accused and such apprehension is not unreasonable under the circumstances.'  [Citations.]"  (*People v. Majors* (2004) 33 Cal.4th 321, 326-327.)

In the present case, the prosecutor argued that the kidnapping charge could be predicated on either of two events, namely (1) when [Ximenez] took G.F. from their apartment to the home of G.F.'s mother, or (2) when [Ximenez] later took G.F. from her mother's home.  Contrary to [Ximenez's] claim, there was abundant evidence of force or fear under either theory.  We briefly recap that evidence.

[Ximenez] attacked G.F. in their bedroom, smothering her with a pillow and then stabbing the pillow and bed.  During this assault, he threatened to hurt or kill both G.F. and their baby.  In describing this attack, G.F. told officers that she thought [Ximenez's] threats at this point were credible.  She added that "although she really didn't think he would hurt their child, she did believe he was going to kill her."

[Ximenez] then packed up items for the baby, took the baby from G .F. and told G.F. to go out to the car.  He told her not to run away because he would hurt the baby if she did.  G.F. told the officer that [Ximenez] took her and the baby against her will by threatening to kill the baby.  It was during the ride to her mother's house that G.F. wrote a message on one of the baby's diapers that "[Ximenez] is trying to kill us."

[Ximenez] argues that these events did not constitute a kidnapping because G.F. was not in actual fear of [Ximenez], as demonstrated by G.F.'s statement that she did not really think [Ximenez] would hurt the baby.  [Ximenez] ignores the context in which that statement was made.  G.F. made this comment when describing the assault in the bedroom.  By the time [Ximenez] ordered her to the car, G.F. had apparently reassessed the situation.  She told the officer that she went into the car because [Ximenez] was again threatening to hurt the baby, and she wrote on the diaper that [Ximenez] was trying to kill "us."

This first movement, from the apartment to the home of G.F.'s mother, was accomplished by means of fear and constituted a kidnapping.

Contrary to [Ximenez's] claims, the same is also true of the second act of kidnapping.  G.F. told officers that [Ximenez] pushed her out of her mother's apartment and told her to get into the car.  He held onto her as they walked to the car.  She said that "she wanted to stay, but was afraid to do anything out of fear of getting hurt or of having him hurt their baby."  [Ximenez] still had the pair of scissors with him, and G.F. did not think it was wise to resist.  She did not tell her mother or brother what was happening because she was afraid that [Ximenez] would hurt her or the baby.  She hoped that her mother would read the note she had left on the diaper.

33

At trial, G.F. recanted her statement and denied that [Ximenez] physically pushed her out of the apartment or ordered her to the car.  [Ximenez] focuses on this version of events and argues that there was insufficient evidence to establish a kidnapping occurred.   The jury was entitled to make a different credibility determination and find G.F.'s first statements to police officers more believable than her trial testimony.  That description of events established that [Ximenez] forcibly took G.F. from her mother's house and provides ample evidence that a kidnapping occurred.[105]

As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[106]  This Court must, therefore, determine whether the California Court of Appeal unreasonably applied *Jackson*.  In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial.[107]  Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."[108]

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[109]  Consequently, although the sufficiency of the

---

[105] *People v. Ximenez*, No. C049844, 2008 WL 762296, at *7-9 (Cal. Ct. App. Mar. 24, 2008).

[106] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see McDaniel v. Brown*, 130 S. Ct. 665, 673 (2010) (reaffirming this standard).

[107] *Jackson*, 443 U.S. at 318-19.

[108] *Id.* at 326; *see McDaniel*, 130 S. Ct. at 673-74.

[109] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its

inquiry by reference to the elements of the crime as set forth in state law.[110]  This Court must also

be ever mindful of the deference owed to the trier of fact and the sharply limited nature of

constitutional sufficiency review.[111]  A fundamental principle of our federal system is "that a

state court's interpretation of state law, including one announced on direct appeal of the

challenged conviction, binds a federal court sitting in habeas corpus."[112]  A determination of state

law by a state intermediate appellate court is also binding in a federal habeas action.[113]  This is

especially true where the highest court in the state has denied review of the lower court's

decision.[114]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial

error is limited to whether the error 'so infected the trial with unfairness as to make the resulting

conviction a denial of due process.'"[115]  "Federal courts hold no supervisory authority over state

---

[110] *Jackson*, 443 U.S. at 324 n.16.

[111] *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005).

[112] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2004); *see West v. A.T.&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[113] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[114] *Id.*; *see West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

[115] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

judicial proceedings and may intervene only to correct wrongs of constitutional dimension."[116]  It

is through this lens that this court must view an insufficiency of the evidence claim.

Ximenez misperceives the role of a federal court in a habeas proceeding challenging a

state-court conviction.  This Court is precluded from either re-weighing the evidence or assessing

the credibility of witnesses.  Where the question is one of credibility, the finding of the finder-of-

fact carries the day.[117]  Under *Jackson*, the role of this Court is to simply determine whether there

is any evidence, if accepted as credible by the jury, sufficient to sustain conviction.[118]  In this

case, the California Court of Appeal determined that there was sufficient evidence of each

element of the crimes to support Ximenez's conviction.  Although it might have been possible to

draw a different inference from the evidence, this Court is required to resolve that conflict in

favor of the prosecution.[119]  Ximenez bears the burden of establishing by clear and convincing

evidence that these factual findings were erroneous;[120] a burden Ximemez has failed to carry.

The record does not compel the conclusion that no rational trier of fact could have found proof of

guilt, especially considering the double deference owed under *Jackson* and AEDPA.

This Court cannot find that the decision of the California Court of Appeal was "contrary

to, or involved an unreasonable application of, clearly established Federal law, as determined by

---

[116] *Smith v. Philips*, 455 U.S. 209, 221 (1982) (citations omitted); *see also Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) ("It is beyond dispute that we do not hold a supervisory power over the courts of the several States." (quoting *Dickerson v. United States*, 530 U.S. 428, 438 (2000))).

[117] *See Bruce v Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

[118] *See Schlup v. Delo*, 513 U.S. 298, 340 (1995) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

[119] *See Jackson*, 443 U.S. at 326.

[120] 28 U.S.C. § 2254(e)(1).

the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[121]   Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Andrade-Williams-Schriro-Richter*, i.e., the state court decision was not more than incorrect or erroneous, its application of clearly established federal law was not objectively unreasonable.   Ximenez is not entitled to relief under his third and fourth grounds.

Ground 7:  Prosecutorial Misconduct/Ineffective Assistance of Counsel

Ximenez contends that the prosecutor made improper gender-biased comments, appealed to passion and prejudice, and impermissibly vouched for a police officer's credibility. Alternatively, Ximenez argues that his trial counsel was ineffective for failing to object to the prosecutor's improper comments.   The facts underlying each prong of this ground, and the reasons given by the Court of Appeal for rejecting each prong are, as follows:

A.  Gender-biased arguments

In her arguments to the jury, the prosecutor discussed G.F.'s efforts to distance herself from the statement she initially gave to the police, noting that G.F. later claimed that [Ximenez] threatened only her, not the baby.  The prosecutor said that G.F. "was still acknowledging that there were threats made and threats, these threats were vi[le], absolutely vi[le], cold, and callous.  To cut someone's face, especially to say that to a woman.  So much we think about in our growing up as little girls and to blossom into being women has to do with our face and that is probably why we paint it and we put mascara on it and cream at night to keep it moisturized and do these things because right or wrong as a society we value our face.  It's something about our beauty or our perception of our beauty.  And for him, a husband, under those circumstances to threaten to cut up her face is vi[le]."

Later, in summarizing the events that occurred in the apartment, the prosecutor said,  "You know, when we use the phrase about our homes being [our] castles, you know, maybe a man's home is a castle but a woman's home it's your sanctuary.  You know for the guys it's a castle and for us it's a nest.  At the end of the day you can kick [off] your things and take off the nylons and let your hair down

_____

[121] 28 U.S.C. § 2254(d).

and be yourself and relax.  That is home.  That was not what was happening at this home."

[Ximenez] characterizes these remarks as an appeal to gender bias and therefore prosecutorial misconduct.

[Ximenez] did not object to any of these statements or seek a curative admonition, omissions that generally forfeit any claim of error.  (*People v. Crew* (2003) 31 Cal.4th 822, 839.)  [Ximenez] counters that any objection would have been futile.  He also asserts that no objection was necessary because the Standards of Judicial Administration imposed an affirmative duty on the trial court to prevent the prosecutor from engaging in conduct that exhibited bias.  Alternatively, he contends that counsel was ineffective in failing to object to these remarks.

[Ximenez's] arguments suffer from one glaring failing:  he cannot demonstrate prejudice, a necessary component to a claim of prosecutorial misconduct or ineffective assistance of counsel.  (See *People v. Gionis* (1995) 9 Cal.4th 1196, 1220; *People v. Jennings* (1991) 53 Cal.3d 334, 357.)  Regardless of whether the prosecutor engaged in inappropriate stereotyping or whether counsel or the court could have raised some objection to these comments, the prosecutor's remarks were irrelevant to the jury's ultimate determination on the issue of whether [Ximenez] made criminal threats to G.F.  Whether remarks threatening to cut G.F.'s face were particularly "vile" because they were made to a woman is immaterial.  [Ximenez's] threat to disfigure was a criminal threat, regardless of the gender of the victim.  Similarly, the prosecutor's *castle versus nest* comments had nothing to do with the substantive issues in the case.

Because it is not reasonably likely that the jury would have returned a different verdict had these comments not been made, [Ximenez] cannot prevail on a claim of prosecutorial misconduct or ineffective assistance of counsel.  (*People v. Gionis, supra,* 9 Cal.4th at p. 1220; *People v. Jennings, supra,* 53 Cal.3d at p. 357.)
B.  Appeal to passion and prejudice

In her argument to the jury, the prosecutor noted that the physical evidence corroborated G.F.'s statement to the police, and she drew the jury's attention to the condition of the pillow and bedding found in the bedroom.  The prosecutor stated, "That pillow is damaged in a fashion consistent with the way that she describes to you it happened.  That was the pillow that her husband used to hold over her face and to press down as he attempted to smother her.  That was the pillow that while she couldn't breathe her husband was taking the scissors and stabbing that pillow so close to her face that she thought he would hit—hit her.  That is the pillow.  "I can't even imagine.  What if you stepped in for a moment to what that must have felt like on that bed.  Not only was her pillow damaged, but the bedding around it was damaged as well.  It's hard to imagine being put in that position in that level of terror that was inflicted upon her in her own bed in her own home."

[Ximenez] contends that this comment was an improper appeal to passion and prejudice.  (See *People v. Pensinger* (1991) 52 Cal.3d 1210, 1250.)  [Ximenez's]

38

failure to raise an objection and seek a curative admission forfeits any claim of error. (*People v. Crew, supra,* 31 Cal.4th at p. 839.)

[Ximenez's] claim is no more successful when framed as a claim of ineffective assistance of counsel. First, because the prosecutor's argument was a fair comment on the evidence, there was nothing for [Ximenez's] attorney to object to with any success. But even if we assume the prosecutor's remarks were objectionable, [Ximenez] cannot show prejudice. The prosecutor's comment was an isolated remark in the midst of a lengthy argument. G.F. had described how [Ximenez] assaulted her by holding a pillow over her face and stabbing the pillow and bedding with a pair of scissors. The physical condition of the pillow and bedding corroborated this testimony. Given the strength of the evidence, there is no reasonable probability that a result more favorable to [Ximenez] would have been reached had counsel objected to the prosecutor's comment and the trial court admonished the jury. Absent prejudice, [Ximenez's] claim of ineffective assistance of counsel fails. (*People v. Jennings, supra,* 53 Cal.3d at p. 357.)

C. Vouching for an officer's credibility

At trial, Officer Lindner testified at length about G.F.'s statement describing the events that had occurred. When G.F. testified, she recanted and attempted to downplay the severity of [Ximenez's] acts. The prosecutor argued that G.F.'s trial testimony was not credible and that the jury should instead rely on the description of events that G.F. first gave to Officer Lindner. The prosecutor explained why G.F. might have recanted and also emphasized that Officer Lindner had no motivation to fabricate G.F.'s statement. As part of this argument, the prosecutor said, "[T]he problem is that if [G.F.] didn't tell Officer Lindner all these things in the report, what does that mean? If you believe her, it means Office Lindner is a liar who should be fired from the Sacramento Police Department. He has perjured himself in court. He has put his living and family's well-being on the line. For what? That's the problem. Because if she did not tell Officer Lindner those things, he sure had a lot of time fabricating, making it all up and write a heck of a report writing it, didn't he? So that's not a very good response."

Citing these remarks, [Ximenez] asserts that the prosecutor engaged in misconduct by improperly vouching for her witness's credibility. Again, however, [Ximenez's] failure to raise an objection in the trial court forfeits any claim of error. (*People v. Crew, supra,* 31 Cal.4th at p. 839.)

[Ximenez's] claim that his attorney was ineffective in failing to make such an objection is unpersuasive. A prosecutor is given wide latitude in arguing to the jury, and is entitled to comment on the evidence, including the reasonable inferences or deductions that can be drawn. (*People v. Hill* (1998) 17 Cal.4th 800, 819.) Misconduct occurs only when the prosecutor's behavior is so egregious that it violates due process by infecting the trial with unfairness. (*Ibid.*)

That is not the case here. The prosecutor was well within the bounds of appropriate argument when she asserted that Officer Lindner had no motivation for fabricating G.F.'s statements and in fact would have risked his career had he done so.

39

The prosecutor highlighted appropriate inferences and deductions to be drawn from the evidence. Defense counsel cannot be faulted for failing to object to nonobjectionable remarks. There was no ineffective assistance of counsel.[122]

A prosecutor may "prosecute with earnestness and vigor—indeed, he should do so."[123] "But, while [the government] may strike hard blows, [it] is not at liberty to strike foul ones."[124]

"To warrant habeas relief, prosecutorial misconduct must 'so infect the trial with unfairness as to make the resulting conviction a denial of due process.'"[125]

In determining whether a comment rendered a trial constitutionally unfair, factors [the court] may consider are whether the comment misstated the evidence, whether the judge admonished the jury to disregard the comment, whether the comment was invited by defense counsel in its summation, whether defense counsel had an adequate opportunity to rebut the comment, the prominence of the comment in the context of the entire trial and the weight of the evidence.[126]

In essence, what is required is that reviewing courts consider the equivalent to evaluating whether there was a "reasonable probability" of a different result.[127]

"Counsel are given latitude in the presentation of their closing arguments, and courts must allow the prosecution to strike hard blows based on the evidence presented and all

---

[122] *People v. Ximenez*, No. C049844, 2008 WL 762296, at *12-15 (Cal. Ct. App. Mar. 24, 2008).

[123] *Berger v. United States*, 295 U.S. 78, 88 (1935).

[124] *Id.*

[125] *Davis v. Woodford*, 384 F.3d 628, 644 (9th Cir. 2004) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

[126] *Hein v. Sullivan*, 601 F.3d 897, 912-13 (9th Cir. 2010) (citing *Darden*, 477 U.S. at 182).

[127] *Hein*, 601 F.3d at 914-15.

reasonable inferences therefrom."[128]   A prosecutor may not, however, vouch for the credibility of

a witness.  As the Supreme Court has explained:

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.[129]

This Court cannot find that the decision of the California Court of Appeal that there was

no prosecutorial misconduct was "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States" or "was based

on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."[130]   Nor can this Court find that the state court unreasonably applied the correct legal

principle to the facts of the Petitioner's case within the scope of *Andrade-Williams-Schriro-*

*Richter*, i.e., the state court decision was not more than incorrect or erroneous, its application of

clearly established federal law was not objectively unreasonable.  Because there was no

prosecutorial misconduct, Ximenez's trial counsel was not ineffective for failing to object.[131]

Ximenez is not entitled to relief under his seventh ground.

---

[128] *Ceja v. Stewart*, 97 F.3d 1246, 1253 (9th Cir. 1996) (internal quotation marks and citations omitted).

[129] *United States v. Young*, 470 U.S. 1, 18-19 (1985).

[130] 28 U.S.C. § 2254(d).

[131] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

41

## V.  CONCLUSION AND ORDER

Ximenez's fifth and sixth grounds are unexhausted, the attack on his 1996 conviction (ninth, tenth, eleventh, and fourteenth grounds) is collaterally barred, and he is not entitled to relief on any of the remaining grounds raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the motion to reconsider, for an evidentiary hearing, and appointment of counsel at Docket No. 48 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[132]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[133]

The Clerk of the Court is to enter judgment accordingly.

Dated: January 31, 2012.

      /s/ James K. Singleton, Jr.
      JAMES K. SINGLETON, JR.
      United States District Judge

---

[132] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705-06 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's  resolution of his constitutional claims or that jurists could conclude  the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))).

[133] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.